Thank you very much, Judge. Good morning. May it please the Court, opposing counsel. Good morning, Your Honors. My name is Dan Cannon, and I am privileged to represent the plaintiff, Adrienne Jensen, in this case. I would aspirationally like to ask for three minutes in rebuttal. And at the outset, I want to underscore the difference between this case and any case ever decided by a federal appellate court on res judicata grounds. The plaintiff was assaulted in five states, including Arizona. The Arizona statute of limitations is still alive today. Why didn't you file in Arizona? The case was filed in Missouri because that is the region in which most of the evidence and witnesses were. And as I said, this is a complex case that involves five different states. That's ultimately the forum that was selected to get around the additional Rule 12 problems that might obtain here, Judge, for reasons of personal jurisdiction and reasons of venue. But there was a case loss. Counsel, I have one question about that. Could the Arizona claims have been litigated in Missouri under Missouri law and procedure? No, Your Honor. According to Missouri's borrowing statute, it appears as though the Arizona claims could not have been litigated there. And to the extent that the Kansas court considered the Arizona claims, it was only to say that we're not going to pull those in under the Missouri borrowing statute and that the Arizona statute of limitations has not yet lapsed. And I think that it's helpful to start, even though uncomfortable for me, it's helpful to start, by examining the worst-case scenario for plaintiff here, assuming everything my friend on the other side here says is true, which is all of plaintiff's claims from all five states were a monolith. They were required to be brought in one forum and in one action, and plaintiff picked the wrong forum. She selected Missouri, and she gets one shot at it and one shot only, and Missouri law happens to say not only that it is a statute of limitations. Let me ask you a question. It seems in your reply brief you focus mostly on the unfairness question. Yes. And, you know, I agree what's alleged, and I guess he's been convicted, that happened to Ms. Jensen is horrific and should never happen to any other person ever. But my concern is that the lawsuit was brought in Missouri, transferred to Kansas, was consented to by Ms. Jensen, and then it was litigated there for two years, all the discovery through summary judgment, got an adverse ruling which was not appealed, and then the suit is brought in Arizona. So just with all of that history, despite I certainly hear your point, we definitely want child sexual assault victims to be able to litigate their claims and have a little more leeway, as a lot of the statutes show, that it takes time to process and come. But with that history, how can we find unfairness? Because no court has ever reached the central issue of USTA's negligence. And I think we'd be talking, we'd be having a very different conversation. In fact, we probably would not even be having this conversation if any court had ever ruled on the central issue of USTA's negligence. The only ruling that we have from the Kansas court is that three statutes of limitations had been blown. So again, if we assume the worst possible outcome for the plaintiff is that everything had to be brought in that Missouri action and consolidated into that one claim, and Missouri law says we don't want our statute of limitations dismissals, we want those to bar actions in any other state now and forever. Why would you appeal the District of Kansas summary judgment order that Judge Coe referenced? Because it would have been futile to appeal on the grounds of the Arizona claim itself. First of all, there was nothing to appeal. But you could have appealed the finding of where the cause of action originated, right? I don't think that, no, Your Honor. But there was a finding made by the district court in Kansas as to that question, right? So that issue could have been appealed, right? But that the claim did not originate in Arizona was the finding. And so our thinking was we bring the claim in Arizona, and I think we're justified in doing so because of case law that exists that says the second case goes forth, case law from this circuit and every other circuit. And in fact, every other circuit court to ever decide an issue of whether an F-1 statute of limitations dismissal should bar an F-2 action where a statute of limitations is still alive has allowed the F-2 action to go forward. And that is based on Federal common law principles of fairness, not on the originating states. Can I ask you, though, in the complaint, it just asserted a negligence claim. It didn't say negligence under Kansas law or Missouri law or Nevada law or Arizona law, correct? That's correct, Your Honor. And that's what makes this has led to the astounding procedural complexity that we find ourselves with today. But, again, backing up to plaintiff's worst case, plaintiff's worst day, all of this stuff was required to be brought in one action. We picked the wrong place because Missouri says we're going to apply our laws extraterritorially. Even so, based on Federal common law principles of fairness, this claim should survive in the Arizona court. And that's the approach mandated by Semtec. And you can see it in action in every circuit court before and after Semtec. That's the Forsyth case, although in dicta and unpublished from this Court, saying F-2 actions. Which State do you think had the most relationship to what happened in the parties? You kind of sort of conceded that it was probably Missouri. That's where the people were. That's where the evidence was. So under conflict of laws, don't we look at which jurisdiction had the most significant relationship to the occurrences in the parties? And why wouldn't that have been Missouri? Which, in a way, seems like you kind of conceded when you chose to file there. I don't know if you were the original counsel who filed. No, I was not, Your Honor. Okay, but counsel for Ms. Jensen. Yes, I know enough about it. I mean, I think it's a difficult question because, in this case, it's quite unlike any other case to come before a Federal appellate court, because all of the other F-1 to F-2 cases that you look at around the country involve some contract dispute that happens in New England, and then we're trying to decide, well, where did the claim arise? Was there any issue whether in picking a venue that maybe not all the other acts would come in? Not to my knowledge, Your Honor. I don't think so. I want to make sure I answer the question. Because even though, I mean, I prosecuted these kind of crimes back in the day, and even though having a discussion that, you know, some of the acts were worse than other acts, that, I mean, from the standpoint, no, children should not be subject to any of them necessarily, but there are some of the acts that, when viewed in light of the worst acts, they look different. But let's say you picked one of the places. You know, he obviously was a typical predator in that he sort of escalated his behavior in terms of starting out sort of a little more, you know, questionably. If you only had that one act, someone might say, oh, well, I was massaging the soldiers because of X, Y, and Z, or the kiss was different than what. But when you get down to the acts where they allege things like, you know, touching the breasts and the vaginal area and penetrating, that's not looking so good, you know. But, I mean, were you planning wherever you went that all of the acts would come in, or were you picking, were you thinking you could be limited by locality? No, I think that the intention was to bring one action with all of the claims in that action. But with the understanding that federal case law, including case law from this circuit, has always said that an F-2 case where there's a still-living statute of limitations is allowed to go forward. Every court, every federal court has followed the traditional rule when it comes to that. But I want to make sure that I answer Judge Koh's question on where is the worst of the worst that happened here. This is complex because you have five different states and torts occurring in all five of those states. So it makes it quite unlike a case like Daiwu, where you have a contract dispute, or even Bendis from Missouri, where you have the parties saying, well, this arose in New York and now we're just trying to find a good place to put the case, you know, someplace that's most favorable to the plaintiff. That's not what occurred here. She was assaulted in Arizona. The worst of the assaults occurred in Arizona, and the statute of limitations is alive today in Arizona. So she should be able to bring a claim in Arizona. Well, when we look at fairness, and I, you know, I agree with Judge Koh, and I don't think you'll find disagreement from anyone. Of course, we don't want people that, I mean, it's terrible what the victim, or if you want to say survivor, or whatever language you want to use, what happened here is bad. But when all of this starts, on the fairness side of it, the last act happened how long ago? The last act was in 2010, I believe, Your Honor. Okay. So when you first file is what year? 2020. Okay. So we're basically talking about 10 years. So when you apply the fairness doctrine is part of that, and I know that there's many reasons why people don't report things that have happened. And here, I think as Judge Koh said, we can assume there's truth to something because this individual was convicted of something and got, I think, what, 78 months or something and was deported. So we can assume that. But is fairness, do we have to look at when you have 10 years that happened there, and obviously if they want to defend, they're not defending the perpetrator here. They're being sued as someone that should have been supervising and making sure that coaches didn't engage in this behavior. Is part of the fairness calculation that with that amount of time, it would be very hard for them to defend themselves? I think it could be, Your Honor. I mean, because your argument of fairness, which it's, you know, it's hard to say isn't, is certainly emotional and certainly appealing that these sort of things, you know, she suffered a lot. And there, but them not being able to defend themselves as to what, you know, what they knew or what they should have known or what they should have, how they should have been handling coaches and minors, that whole thing. I certainly agree that fairness to the defendant is an issue here. But where you have a still living statute of limitations, Arizona has said, we want to regulate the conduct that happens within our borders. And my friend on the other side says that doesn't matter. That shouldn't matter to the federal courts at all, that the abuse occurred in Arizona and that Arizona has a strongly stated public policy preference that says we want to regulate this stuff. Not only do we want to regulate it, but we're going to give a retroactive statute of limitations, you know, to people who were abused. You're down to three minutes. If we don't have time, go ahead. I have a question. I do have a question on a slightly different issue. And that is whether the ruling under Missouri law in the Missouri action is procedural or substantive. And if the answer to that question is unclear under Missouri law, is this something that we should certify to the Missouri Supreme Court because it may change the race judicata analysis? I was afraid someone was going to pull me into an eerie vortex here, Judge. Two things about that. One is that I think our position is principles of federal common law control this no matter what. And if you conduct a proper fairness analysis under federal common law, regardless of what Missouri law says, and we think Missouri law is actually in our favor, and I'm glad to explain that. But to the extent that, again, if we say Missouri law is totally against us here, principles of federal common law fairness still apply. And that involves looking at the second state's interests. It involves looking at fairness to the defense. You didn't offer certification to the Missouri Supreme Court, did you? I think we have suggested that it could happen in our principal brief, Your Honor. Okay. I don't understand that to be required. I think that is in our discretion whenever we want to. I think that – I'm sorry. Go ahead. No, I'm sorry. I think ultimately federal common law controls, and so I do not think it's necessary. And I think that it is – but I do think it is incumbent upon this court sitting in – or a district court sitting in diversity to look at the interests of the other state. And even if you – I mean, even if you disregard Arizona's interests, you know, the simple fact that this is an F-2 action with a living statute of limitation, that there are no other remedies available to this plaintiff. If she loses in this court, she has nowhere else to bring this case. And that matters for fairness analysis according to this court's opinion that was cited by the district court, which is Marine v. HEW from 1985. Can I ask you another question on the certification, which I'm open to considering? Is there any indication that the Missouri Supreme Court would not follow the Bendis decision of the Missouri Court of Appeal? Yes. Because that's what it would really come down to, right? Yes. Would they come with something different? And what is that? The slew of cases from Missouri that we've cited, I believe it is in pages 32 to 36 of our brief, where if you even look at the intrasystem dismissals in Missouri from 1967 and before up until present day, up until the Ziadi case in 2021. But you would agree that Bendis is not in your favor. I don't think that Bendis is in our favor, but I think it's difficult to square Bendis with the rest of Missouri case law unless you analyze it as a matter of basic fairness. The Bendis plaintiffs had had three bites at the apple by the time that that case came to the Missouri courts. That was number four, the Bendis case. And I think the Court looked at it. It doesn't say this explicitly, but the Court looks at it and says, you're done. You've had enough. You even had a trial on this, and you've had some play out of the substantive issues that attend this case, not just procedural bars. That's what sets Bendis apart from the other cases. And I think Bendis, by the way, is an anomaly because it is the only case in Federal or State courts that says that the F-2 action would be barred. But even if we assume the worst about the Bendis case, my point is that case cannot reach across state lines and totally abrogate any action that she might have in Arizona for an abuse that occurred in Arizona. Thank you. All right. We've taken you over, but I'll give you two minutes for rebuttal. Good morning. Good morning. May it please the Court. My name is Heather Hatley, and I am here on behalf of the United States Tennis Association. Thank you for entertaining these arguments today. It's an honor to be before you. To answer the Court's question that they have presented to us in this case, yes, Missouri considers a summary judgment on statute of limitations ground to have a claim preclusive effect. Under Missouri law, summary judgments always are on the merits and have claim preclusive effects. Is that a Supreme Court case or is that an intermediate court? I believe it is cited throughout Missouri courts. So there are many Missouri Federal and State courts citing this proposition. I think it's also a proposition represented in the restatement of judgments, which has been adopted by Missouri. So on the certification issue, I'm assuming that you're telling us that because you're arguing against certification. I think that, as Judge Graber said, that's in your all's discretion. So I'm not necessarily arguing against or for, but I don't think it's necessary, and I can explain why. In addition, under Missouri Supreme Court case law, once a statute of limitations has run, it creates a vested substantive right to be free from suit in the defendant. In addition, so I guess the context here is there is not a case directly on point of all fours for this case. That's true. But there is a lot of guidance in Missouri to tell us that this claim should be barred.  I don't think it's actually a lot of smoke. I think there's fire. So if we look to Bendis, which we've discussed here, Bendis foresaw this exact situation and, in fact, went through and said we would bar a claim like this. They could foresee a defendant with a national presence similar to USTA, and a plaintiff could go around filing cases in states all around the country to find a statute of limitations that stuck under a borrowing statute. This also brings me to a point brought up by Judge Koh when discussing a conflict of law issue. Missouri's borrowing statute removes any conflict or choice of law issue. It is a pure claim accrual analysis. So plaintiff filed their suit in Missouri. And also to address another point brought up by Judge Koh. If the plaintiff had filed in Arizona, would plaintiff have had a completely different situation? Perhaps. We have not analyzed Arizona's claim accrual analysis. And that's really what controls in this case. Another issue here is that while the case was filed in Missouri originally, there was really no connection to Missouri in this case other than the defendant abuser, not a defendant, but the abuser in this case was a Missouri resident at the time of the abuse. Kansas City, Missouri is a border. Everyone agreed to the transfer is my understanding. Yes. And it would be our position that actually at the time of the abuse, Ms. Jensen was a Kansas resident. So if we were going down some choice of law analysis, which isn't really relevant, it really was only relevant for the transfer purposes. Can you slow down a little bit? I can. I know it's a problem I have. I go too fast. I have a question that I asked of opposing counsel as well. If there had been no statute of limitations problem, could the Arizona claim have been litigated in Missouri? And his answer was no, it could not. And I'm interested in your answer to that question. I think it absolutely could have if there was no statute of limitations issue. And it's very clear that the intent, and I think it was actually conceded by my friend that that was the intent to include both complaints. So the petition that was originally filed in Jackson County and then the amended complaint in the District of Kansas. You're not going slower. Okay. I'm sorry, Judge. Court reporters always complained about me too. Oh, I get it all the time. So I apologize. But the exact same claims, the abuse alleged in Kansas, Missouri, Alabama, Nevada, Arizona, were in all relevant petitions or complaints in every court. That was obviously the intent, to litigate those things. And as a matter of fact, we did litigate the Arizona claim. It was brought up on a motion to dismiss. It was raised in summary judgment. We conducted extensive discovery on the Arizona claim. So the idea that this claim wasn't brought or couldn't be brought or wasn't adjudicated is against the very clear facts of this case. If that answers your question, Judge, I'm not, hopefully. But you would agree it's unclear whether Missouri law would apply its claim preclusive effect to the first action in a court outside of Missouri, right? I disagree, actually. Why? So I disagree for various reasons that I've stated previously. For instance, summary judgments are always on the merit and have claim preclusive effect. Missouri has also, as I stated, adopted the restatement of judgment. Section 87, which is actually said of the law. But that's a different question, right, than whether it would apply its law in a court outside of Missouri. So I don't think it is. Under Section 87, it essentially says, and I can pull up the exact language, but my reading of it is if it's barred in Missouri, it's also barred in other jurisdictions because it came to a final judgment.  Section 87. But what case says what you're contending? That is, claim preclusive effect to basically shut down a first action would apply outside of a court, a court outside of Missouri. And I understand that point. So I think that there is not a Missouri Supreme Court case directly on point explicitly stating that. But we do know the various points that we brought up, that there's a vested substantive right to be free from suit in the defendant. Missouri has stated interests in fostering reliance on judicial action, preventing inconsistent decisions, preventing forum shopping, protecting adversaries. That question is dispositive here, right? That is dispositive. And so to answer, I guess, to answer your question better, when you look at Daewoo, the dissent actually, for a clear citation of the restatement, which has been adopted by Missouri, indicates that when a judgment bars a claim in the State in which it's rendered or the jurisdiction in which it's rendered, it also bars claims outside of that jurisdiction. And the real critical point, I think, in this case is that this was a judgment. This was a summary judgment. This was not a dismissal. This was not a shotgun reaction, as you pointed out, Judge, of you filed a motion to dismiss, and boom, you're out of here on statute of limitations. This was a fully litigated case, and it, by its nature, included every piece of abuse that we're here talking about today. And, in fact, Missouri's res judicata analysis, I think, itself suggests that it would apply outside of Missouri, and I think Bindis itself states that. Well, I think, here, I think your friend on the other side said it would have been we asked why he didn't appeal the summary judgment in Kansas. He said it would have been futile. Could we hear your response on that? Sure. I don't know how the Tenth Circuit would have reviewed that or found it to be futile at all. But if there is a question about which law applied, which extensive discovery was done on, and under Missouri's law, the choice of forum was plaintiffs. Missouri was where they chose to file their claim. By doing that, they availed themselves of the laws of Missouri and assumed that their claims would be controlled by Missouri law, presumably. That's what someone does when they file a suit in a state. So the claim preclusive effect of this judgment in the District of Kansas is controlled by Missouri law under SimTech. I think I'm not answering your question. No. So if he had appealed the summary judgment, how could that have changed things? Well, again, I can't predict what the Tenth Circuit would do, but they could have challenged the claim accrual analysis. They could have challenged that Missouri law applies. They could have argued a different state's law applied to control this. They also could have furthered their argument, which was fully litigated and briefed and rejected by the District of Kansas that the Arizona statute of limitations, in fact, applied to the claim. They could have said, we think that there's a separate Arizona claim, so the court should have maybe granted summary judgment in part and denied it in part. So there was a lot they could have done here but didn't do. And there's plenty of case law from this circuit and across the country that when you fail to appeal something, you're stuck with the result of that. And so what's really before this court is the claim preclusive effect of that judgment in Kansas. Do you know how long certification takes in Missouri? I do not know. Have you had any experience with that? I do not know how long that takes. Because some states are really fast. Like, for example, because I've done programs teaching, California takes quite a while. Texas, for example, they take all certifications, basically, and they put it at the top of the list and give people an answer quickly. So I don't have an answer to that question, but I also don't know that I think certification is necessary. If we look at Bendis, as I mentioned earlier, this exact situation was contemplated by the court and essentially said avoidance of vexation of multiple lawsuits is precisely the purpose of res judicata doctrine. And it talks about suits in other states, in other jurisdictions, against the same defendant that's already had a judgment. Excuse me. What do we make of the Missouri law that says that when a cause of action originates in a state other than Missouri, Missouri applies that foreign state's statute of limitations? So if we're talking about Missouri's borrowing statute, it only applies when the statute is shorter than Missouri's. So here it applied because Nevada had a shorter statute of limitation than Missouri did, as did Kansas and Alabama. And Arizona's longer. Arizona's longer, as was Missouri's. So we talked about fairness, and so maybe you should respond to why that shouldn't save them. So fairness, I believe, is a two-way street. I would agree with the court. What happened to misdemeanor is egregious. No one should have to go through that, and I understand that. But this case was fully litigated. It was taken to a summary judgment. There was nothing ever precluding anyone from moving to dismiss this case and refiling somewhere where they were certain the statute had not run. We gave notice and a motion to dismiss that we believed that the statute of limitations. But counseling wasn't fully litigated in the sense of examining what the abuser did and what the USTA's obligations were. So I would disagree with that. I couldn't tell if you said it wasn't or if it was. But it was, I believe, fully litigated. So this case went on for the better part of two years. Extensive discovery was had. Thousands of documents were produced. We produced two corporate representatives who, you know, sat for eight hours to discuss USTA policies and procedures, tournaments, those types of things. In addition, it's, I think, very noteworthy that the District of Kansas actually offered plaintiff additional time to conduct further discovery on the issues of duty, statute of limitations, and which law would apply. And plaintiff declined that invitation. So the idea that it's unfair now that the door has been closed to them after they had an adverse judgment against them, that necessarily indicates that all issues and facts were litigated. This goes right back to Missouri's claim splitting, anti-claim splitting doctrine, which is part of the res judicata doctrine. So you can't say I have an Alabama claim, a Kansas claim, a Missouri claim, an Arizona claim, and have five lawsuits or however many lawsuits. Well, the summary judgment, I think what Judge Graber is getting at, did the summary judgment say that USTA had no duty? They did not. They didn't need to reach that issue. But you said there was discovery? There was extensive discovery. There were several discovery disputes that the court was involved in on all of these issues. And duty, statute of limitation, and choice of law were the topics of discovery. Because at the initial conference with the court, our Rule 16 conference, we told the court we believe there are dispositive issues in this case. So the court ordered that we conduct bifurcated discovery on those issues, duty, statute of limitations, and what choice of law would apply. Another aspect here is that, as I mentioned, the Missouri Supreme Court has said that when a statute of limitations runs, it creates a vested substantive right in the defendant to be free from suit. Therefore, when we're talking about claim preclusive effect, statute of limitations becomes a substantive matter. If we were talking about choice of law, it would be a procedural matter. But here, this has become a substantive issue. Can we talk about the unfairness prong here?  Because it almost seems like because this abuser abused Ms. Jensen so many times in so many states, USTA is almost benefiting from that, which is a very odd consequence, right? I mean, why shouldn't we find that a victim of child sexual abuse, when Arizona provides a lengthy time to sue, should get a day in court on those claims? And it seems like she's almost being penalized for having been victimized in so many different locations over an extended period of time. Well, I don't think USTA is getting any benefit in this lawsuit under these facts in this case. And certainly, it's USTA's position this was awful, what happened to her. But it's also their position that they had nothing to do with this abuse. But that question has never been decided by a court or by a jury, whether they were or were not responsible for better supervision or the other things that are being claimed here. So, yeah, there's been a lot of litigation, but the actual claim, no decision has ever been made, as far as I can tell. So, I think a decision has been made. The District of Kansas addressed this issue and said that Arizona law does not control this situation. While there was abuse that occurred in Arizona, it does not control here. And this, again, goes back to res judicata and Missouri's stated interests in their doctrine of res judicata, which fosters reliance on judicial action, preventing inconsistent decisions, which is essentially what would happen here. We have USTA not liable in one state, liable in another, presumably, if that's what we're proposing, which flies in the face of Missouri's anti-claim-splitting statute, which says all foundational facts establish the cause of action. So the Arizona claim is undeniably part of this, the District of Kansas case. There, I think that's a, not a real dispute in this case. And assuming, let's just go down the hypothetical, if it is some separate sort of claim which we dispute, it was merged into this judgment and the claim is barred by the District of Kansas. Again, this was litigated, brought to a summary judgment. This is not a knee-jerk type of dismissal. This was a summary judgment. And judgments have finality. Any additional questions? No, thank you. All right. Thank you for your argument. Thank you, Your Honors. I want to pick back up by saying that the fairness analysis has never really been conducted according to the intent of Semtec and Daiwu. That didn't happen in the Arizona District Court. And I think before we start talking about bouncing this issue back over to the Missouri Supreme Court, I think, again, federal common law principles are what are going to control here. And when you look at what the federal courts have already said about what constitutes fairness, notably, consistently... The case you rely on is unpublished and is not precedential. So how should we... I can find ways that Zhang and Marino are distinguishable because those, the district courts, actually made statements that I think the parties relied on. There was a different factual situation. So how can we rely on an unpublished decision? So there's no test for fairness. We know that there's a fairness requirement from Semtec itself and from Daiwu and from Zhang. But we don't know exactly what that entails. But you can piece it together based on, not just on the dicta from Forsyth, but in Zhang itself, that is a case in which the... That is a published case from 2003. It's post-Semtec. You've got the plaintiff bringing a claim in a commonwealth court. They say, no, that claim is time-barred. She brings it back to the federal court, and the federal court says, yeah, you're not going to have any place else to bring these claims, so we're going to treat this as falling under the relation back doctrine, and it falls in with your federal claims. And I submit to you, that is an even... This case is even worse because if she loses this claim that is even still alive in Arizona today, she has no place else to bring it. And on that point, I'll note the Third Circuit's opinion in Chavez. Chavez is a very good case for us. Even though it's not... It's from outside of this circuit. Because it's everything terrible that you could possibly imagine in an F1 to F2 case. In fact, the Court finds that the plaintiffs were forum shopping in that case. And you have a case that's brought in Texas, followed by a case that's brought in Louisiana. Both of those cases were held to be barred by the statute of limitations. But the Delaware courts and the Third Circuit, looking at the Delaware decision, says, because of fairness principles, because Louisiana... It really is a Federal common law issue, but they say looking at Louisiana law, Louisiana says exceptional circumstances. Well, okay. This is an exceptional circumstance. Why? Because the plaintiff will have no place else to go, and because this is a Byzantine procedural case, because it's procedurally complex. All right. Unless my colleagues have questions, I've been quite permissive. So I'll ask you just to... wrap up with your final words. Well, certainly. And I don't know how many final words you want to give me, Your Honor. Oh, about 15 seconds of final words. So I'll circle back to Daiwu. I'm a mother, so don't push. I will fully obey here, Judge. But I want to circle back to Daiwu, because under that case, this Court says a corporation can file three lawsuits against a business partner, change the legal theory on the last one, within a span of 10 years, and still not be dismissed under res judicata. We're asking for a young woman to be able to file a negligence claim in the jurisdiction where she was sexually assaulted, and have someone say whether someone was negligent for that. That's all we want here. Thank you. All right. Thank you both for your helpful argument in this matter. This case will stand submitted, and we will be in recess until tomorrow at 9 a.m. Madam Clerk, can I see you in the room? Thank you. All rise.
judges: GRABER, CALLAHAN, KOH